DECISION AND JUDGMENT ENTRY
Andrew R. Tripp appeals the judgment of the Athens County Court of Common Pleas, Juvenile Division, adjudicating him a delinquent child. Tripp contends that he did not receive effective assistance of counsel. Because Tripp did not show that his trial counsel performed deficiently or that he suffered prejudice as a result of his counsel's performance, we disagree. Additionally, Tripp asserts that the trial court's determination is against the manifest weight of the evidence. We disagree because, after reviewing the entire record, we find substantial evidence upon which the court could reasonably conclude that the state proved all the elements of the offenses beyond a reasonable doubt. Accordingly, we affirm the judgment of the trial court.
 I.
The trial court adjudicated Tripp to be a delinquent child based upon its findings that he committed acts constituting felonious assault, a violation of R.C. 2903.11(A)(1), and acts constituting rape, a violation of R.C. 2907.02(A)(2). The trial court then transferred the cases to Tripp's county of residence, Hocking County, for disposition.
The felonious assault charge arose from the following events. On January 23, 2000, Tripp attended a party at the home of J.J. and Lee Eckels in Nelsonville, Ohio. Shawn Gallagher also attended the party. At some point in the evening, J.J. or Lee Eckels asked Gallagher to leave. The Eckels and their guests escorted Gallagher out the door. Tripp was following the others back into the house when Gallagher pushed him.
As Tripp turned, Gallagher allegedly attempted to punch him. Tripp struck Gallagher several times in the face. By his own admission, Tripp continued to punch Gallagher after Gallagher fell to the ground. Tripp also admitted to kicking Gallagher in the stomach. Tripp knocked Gallagher unconscious.
Gallagher reported the incident to police, and Tripp was charged with delinquency for acts constituting felonious assault. Gallagher missed several days of school due to his injuries. Among his injuries, Gallagher lost two front teeth, bled from his ear canal and experienced some hearing loss, and had numerous lacerations on his mouth. He also lost all memory of the assault.
A separate incident gave rise to the rape charge. On August 2, 2000, Tripp attended a party at the apartment of a Nelsonville, Ohio woman. The woman hosting the party, later to become the victim, went to sleep in her bedroom around midnight. At approximately the same time, Tripp and his girlfriend, Vanessa Perkins, entered the victim's roommate's bedroom for the purpose of having intercourse. Tripp and Vanessa left the roommate's bedroom and went to sleep on the living room floor between 3:00 and 3:30 a.m. The only other person in the apartment was Vanessa's brother, Charlie Perkins, who was asleep on the living room couch. Around that time, Tripp entered the victim's bedroom, ostensibly to get a blanket.
At approximately 3:30 a.m., a man entered the victim's bedroom, removed her shorts and undergarments, and raped her. The victim, who describes herself as a sound sleeper, did not awaken until the man was on top of her and penetrating her vaginally. She noticed that the man had the same build as Tripp and, like Tripp, had very white teeth. She yelled and struggled to get the man off of her. He resisted getting off of her, but the victim managed to shove him off with her forearm before he ejaculated. She then ran across the hall into the bathroom, stayed in the bathroom for only ten or fifteen seconds, and then went to the living room to wake her friend Charlie.
As the victim tried to wake Charlie, Tripp wordlessly entered the room from the vicinity of the victim's bedroom and lay down next to Vanessa, who was asleep on the living room floor. The victim, too distraught to explain to Charlie that she'd been raped, begged Charlie to get her out of her apartment and take her to a friend's house. Within minutes of arriving at her friend's house, she told her friend that Tripp raped her. She then went to the hospital, where she reported to the staff and the police that Tripp raped her. The hospital performed a rape test, but the Bureau of Criminal Investigation found no semen on the victim.
The trial court held an adjudicatory hearing on the charges on December 7, 2000. Tripp's trial counsel did not provide the state with a witness list until the day before trial. The list named Vanessa Perkins and Tammy Tripp, Tripp's mother. The state objected to Tripp calling his mother as a witness, but did not object to Tripp calling Vanessa to testify.
The trial court first heard witnesses on the felonious assault charge. Only Gallagher and Tripp testified. Tripp testified that he hit Gallagher in self-defense, but admitted to kicking Gallagher in the stomach and hitting Gallagher after he fell to the ground.
On the rape charge, Tripp, Vanessa Perkins, Charlie Perkins, and the victim testified. Vanessa testified that Tripp only left her when he went to get a blanket for them to sleep on. However, Vanessa admitted to lying previously to police investigators about her and Tripp's activities that night. The victim testified that before the rape, she considered Tripp a friend and had no grudges against him. Tripp and Charlie's testimony backed up Vanessa and the victim's testimony, respectively.
The trial court found that the state proved the elements of each offense beyond a reasonable doubt, and adjudicated Tripp to be a delinquent child on both charges. At the dispositional hearing in Hocking County, the court committed Tripp to the Department of Youth Services for one year or until he reaches the age of twenty-one.
Tripp appeals the outcome of the adjudicatory hearing, asserting the following assignments of error:
APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
THE VERDICTS OF THE TRIAL COURT ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 II.
In his first assignment of error, Tripp asserts that he did not receive effective assistance of counsel. Specifically, Tripp asserts that his trial counsel was ineffective because counsel's failure to provide a witness list in a timely manner prevented him from calling witnesses in the felonious assault case. Additionally, Tripp asserts that his counsel was ineffective based upon his failure to call an expert witness to testify regarding the results of the rape test kit.
In reviewing a case for ineffective assistance of counsel, we apply the following test:
 Reversal of a conviction or sentence based upon ineffective assistance requires (a) deficient performance, "errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment"; and (b) prejudice, "errors * * * so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."
State v. Ballew (1996), 76 Ohio St. 3d 244, 255, citing Strickland v.Washington (1984), 466 U.S. 668, 687. As to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland
at 689. Furthermore, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. The United States Supreme Court has noted that "there can be no such thing as an error-free, perfect trial, and * * * the Constitution does not guarantee such a trial." United States v.Hasting (1983), 461 U.S. 499, 508-509.
With respect to the felonious assault case, Tripp contends that his counsel performed deficiently when he failed to provide reciprocal discovery, specifically a witness list, to the state in a timely manner. Additionally, Tripp asserts that his counsel failed to call some unnamed witnesses. Tripp correctly asserts that the failure of counsel to provide reciprocal discovery may result in a finding of deficient performance by counsel. State v. Biggers (1997), 118 Ohio App.3d 788, 791. However, reversal based upon ineffective assistance of counsel requires a showing of both deficient performance and prejudice.
In this case, while we do not condone counsel's failure to provide timely discovery, we find that the error was not so serious that it deprived Tripp of a fair trial, and it did not prejudice Tripp. Of the two witnesses named on Tripp's witness list, the court permitted one, Vanessa Perkins, to testify. The record contains no evidence that the excluded witness, Tripp's mother, observed the assault or possessed any firsthand knowledge of it.
Likewise, with respect to the party guests whom Tripp feels his counsel should have named in discovery and called to testify, the record contains no indication that they might have strengthened Tripp's case. We cannot consider an ineffective assistance of counsel argument that relies upon facts not in the record, such as what the witnesses would have testified. See State v. Cooperrider (1983), 4 Ohio St.3d 226, 228. Tripp's testimony established that Tripp and Gallagher were the only people outside when the fight occurred, so there is no indication that anyone observed the assault. As to testimony regarding Gallagher's behavior before the assault and Tripp's assertion that he acted in self-defense, Tripp's own testimony established that Tripp continued to hit Gallagher after Gallagher fell to the ground. Thus, Gallagher's behavior prior to the assault is irrelevant and Tripp's assertion that he acted in self-defense, while perhaps true for the first punch he threw, is without merit as to the continued beating. Thus, we find that Tripp received effective assistance of counsel in the felonious assault case.
With respect to the rape case, Tripp asserts that his counsel was ineffective based upon his failure to call an expert witness to testify regarding the results of the rape test and medical examination performed upon the victim. Tripp's counsel moved to introduce the results of the rape test into evidence, and the state stipulated to their authenticity. The results of the rape test show that no semen was found on the victim. Tripp contends that expert testimony would have been helpful in determining whether a rape actually occurred.
While calling an expert witness to testify regarding whether a rape occurred may have helped Tripp's defense, it is just as likely, if not more likely, that such expert testimony would have harmed his case. Tripp's counsel's decision to allow the absence of semen on the victim speak for itself constitutes sound trial strategy given the likelihood that any expert witnesses would have testified that the absence of semen does not necessarily indicate that no rape occurred. Therefore, we find that Tripp's counsel did not perform deficiently by choosing not to call any expert witnesses.
In short, we find that Tripp's counsel provided him with competent, effective professional assistance on both charges. Accordingly, we overrule Tripp's first assignment of error.
 III.
In his second assignment of error, Tripp asserts that the trial court's finding that he committed felonious assault and rape is against the manifest weight of the evidence.
The test for determining whether a conviction is against the manifest weight standard is much broader than that for examining the sufficiency of the evidence. State v. Banks (1992), 78 Ohio App.3d 206, 214; Statev. Martin (1983), 20 Ohio App.3d 172, 175. In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted.State v. Garrow (1995), 103 Ohio App.3d 368, 370-71; Martin,20 Ohio App.3d at 175. "A reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." State v. Eskridge (1988), 38 Ohio St.3d 56, paragraph two of the syllabus.
Felonious assault occurs when a person knowingly causes serious physical harm to another. R.C. 2903.11(A)(1). "Serious physical harm" includes, in relevant part:
 (b) Any physical harm that carries a substantial risk of death;
 (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement * * *.
R.C. 2901.01(A)(5).
Tripp's own testimony established that he knowingly caused harm to Gallagher, in that Tripp testified that he continued to punch Gallagher after Gallagher fell to the ground. Gallagher suffered permanent injury and disfigurement, as well as temporary incapacity and risk of death, in that he lost two teeth in the assault, he was unable to attend school for several days, and he was knocked unconscious by the beating. Thus, we find that the trial court's finding that Tripp committed acts constituting felonious assault is not against the manifest weight of the evidence.
A rape occurs when an offender engages in sexual conduct with another and "the offender purposely compels the other person to submit by force or threat of force." R.C. 2907.02(A)(2). Tripp contends that the state did not prove beyond a reasonable doubt: (1) that anyone engaged in sexual conduct with the victim; (2) if someone engaged in sexual conduct with the victim, that force was used; and (3) if someone forced sexual conduct with the victim, that Tripp was the perpetrator.
Although, as Tripp contends, the state did not present any physical evidence that anyone engaged in sexual conduct with the victim, the state did present the testimony of the victim. The testimony of the victim constitutes substantial evidence upon which the court could have reasonably concluded that the state proved beyond a reasonable doubt that someone engaged in sexual conduct with the victim.
Additionally, as Tripp contends, the state did not present any physical evidence that the sexual conduct occurred by force, and did not present any evidence at all to show that the initial contact occurred by force. Tripp suggests that the offender's conduct in this case may have constituted the less serious offense of sexual battery, defined in relevant part as sexual contact occurring when "[t]he offender knows that the other person submits because the other person is unaware that the act is being committed." See R.C. 2907.03(A)(3). However, the state did not charge Tripp with sexual battery. Tripp contends that we must reverse his rape conviction because the state did not present substantial evidence upon which the court could have reasonably concluded that the state proved the element of force beyond a reasonable doubt.
We were faced with a similar fact pattern in State v. Collins (Sept. 22, 1995), Athens App. No. 94CA1639, unreported. In Collins, the victim awoke to find the offender penetrating her. She struggled to get away, and the offender relented. In that case we held as follows:
 The word "forced" as used in R.C. 2907.02(A)(2) means any violence, compulsion, or constraint physically exerted by any means upon or against a person. See R.C. 2901.01(A). This includes all kinds of force physically exerted against a person. State v. Campbell (Aug. 3, 1993), Montgomery App. No. 13138, unreported. It is not required that the force used be overwhelming. State v. Childers (Oct. 7, 1992), Montgomery App. No. 12705, unreported. Indeed, the force used may be subtle rather than overt and physically brutal. See State v. Smelcer (1993), 89 Ohio App.3d 115, 126; State v. Fowler (1985), 27 Ohio App.3d 149, 154. The force and violence necessary to commit the crime of rape depends upon, inter alia, the age, size and strength of the parties. State v. Eskridge (1988), 38 Ohio St.3d 56, paragraph one of the syllabus.
* * *
 We agree with appellant that virtually no evidence was submitted to show that appellant used "force" to compel [the victim] to submit to sexual intercourse at the outset of the incident. However, part way through that incident, the evidence shows that [the victim] regained consciousness, attempted to resist the sexual conduct and that such resistance met with the exercise of force by appellant. Whatever crime may have been occurring when [the victim] was unconscious, it is clear that the force used by appellant to combat her resistance when she awoke was sufficient to classify this incident as forcible rape under R.C. 2907.02(A)(2).
In this case, the victim testified that when she awoke she "panicked," "screamed," and began "fighting [the perpetrator] off." She yelled at the perpetrator and pushed him with her forearm. She determined that the perpetrator was much bigger than her based upon the force of his body weight against her. Although the victim said that she did not need to use "a humongous amount of force" to get away from the perpetrator, she testified that the perpetrator "resisted getting off top of me." We find that this testimony constitutes substantial evidence upon which the court could have reasonably concluded that the state proved the element of force beyond a reasonable doubt.
Finally, Tripp contends that the state did not present substantial evidence upon which the court could have reasonably concluded that the state proved beyond a reasonable doubt that he perpetrated the rape. Tripp contends that another person matching his description may have entered the victim's apartment and raped the victim while he slept on the living room floor with his girlfriend. Again, we find that the testimony of the victim constitutes substantial evidence upon which the court could have reasonably concluded that the state proved beyond a reasonable doubt that Tripp was the individual who committed the rape. Specifically, the victim testified that the individual who raped her matched Tripp's body type and that his teeth, which were especially white, looked like Tripp's teeth. Additionally, she observed Tripp walk out of her bedroom almost immediately after the rape. Each witness testified that to their knowledge, Tripp and Charlie Perkins were the only males in the apartment at the time of the rape. The victim knew and recognized Tripp. She told two friends that Tripp had raped her within minutes of the rape. Shortly thereafter, she named Tripp to hospital and police officials.
Based on the testimony described above, we find that the state presented substantial evidence upon which the trier of fact, the trial court in this case, could have reasonably concluded beyond a reasonable doubt that Tripp raped the victim. Thus, the trial court's finding that Tripp committed acts constituting rape if committed by an adult is not against the manifest weight of the evidence. We overrule Tripp's second assignment of error.
 IV.
In conclusion, we find that Tripp received effective assistance of counsel. Additionally, we find that the trial court's findings are not against the manifest weight of the evidence. Accordingly, we overrule both of Tripp's assignments of error and affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Hocking County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J. Evans, J.: Concur in Judgment and Opinion.
For the Court
 ___________________________ Roger L. Kline, Judge
 NOTICE TO COUNSEL
Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.